No. 37,666

ROBERT DRESSLER, by O. Q. Claflin, III, Next Friend, *Appellee, v.* JOSEPH N. DRESSLER and GLADYS M. DRESSLER, doing business as Joe Dressler Transfer Company (also known as Joe Dressler Transfer, Storage and Ice Company), and EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, *Appellants.*

(208 P. 2d 271)

Opinion filed July 9, 1949.

*John J. Alder,* of Kansas City, Mo., argued the cause, and *H. S. Roberts,* of Kansas City, was with him on the briefs for the appellants.

*Joseph H. McDowell,* of Kansas City, argued the cause, and *Harry Miller, Jr., Carl V. Rice, Conrad Miller, Claude L. Rice, Jr.,* and *Mary Jane Keller,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ARN, J.: This is a workmen's compensation case. An award was made by the compensation commissioner in favor of claimant and against the respondents and the insurance carrier for medical and hospital expense and for temporary total and permanent partial disability. On appeal to the district court the commissioner's award was adopted by and made the judgment of that court. From that judgment respondents and their insurance carrier appeal.

The claimant, Robert Dressler, is the minor son of respondents and worked during the summer delivering ice for respondents on their city ice route. On September 5, 1947, he fell out of the ice truck and was injured when the truck wheels ran over his body. Robert was fifteen years old in June, 1947, and was scheduled to quit his summer employment with his parents, the respondent employers, and return to high school as a sophomore on September 8, 1947. His parents and employers had not obtained a work permit for Robert as required by section 38-604, G. S. 1935. Robert's duties on the ice truck required him to ride with another of respondents' employees who drove the truck, and to deliver 25- and 50-pound cakes of ice to the city customers. The delivery truck upon which he worked was·a 1½-ton Chevrolet from which both doors of the cab had been removed to facilitate delivery of ice. The seat next to the driver was removable to permit filling of the gasoline tank. The cushion on the right seat was apt to "scoot" out if the truck stopped suddenly, or struck a hole, etc. At about 3:15 p. m. on September 5, 1947, the truck had just turned a corner and was traveling ten to fifteen miles per hour when the right seat cushion slipped out and Robert went with it. There was nothing for him to grab hold of, and he fell out and the truck's rear wheel ran over him. Robert was severely injured and was admitted to the hospital. Respondent employers had notice of the injury and paid claimant's hospital and medical bills for the period from September 5, 1947, to March 5, 1948, out of the company's bank account. No salary

was paid during this period and the insurance carrier paid none of the hospital or medical bills. On March 25, 1948, claim for compensation was made. It was stipulated that the insurance carrier had a contract of workmen's compensation insurance coverage with respondent employers. The record shows that respondent employers withheld income tax on Robert's wages of $30 per week and paid social security tax thereon and treated him as any regular employee. He lived at home without paying room and board, was permitted to retain all his earnings and maintained a separate bank account. The nature and extent of Robert's injury and disability are not questioned in this appeal.

Respondent insurance carrier contends on appeal here that—

(1) The minor claimant was unlawfully employed in violation of the child labor law, particularly sections 38-602 [G. S. 1947 Supp.], 38-603 and 38-604, G. S. 1935, and therefore cannot recover under the workmen's compensation act.

(2) The furnishing of medical aid and hospitalization by the employers was due to their love and affection as parents of claimant rather than because of any employer-employee relationship, and therefore such payments do not extend the time for filing of claim for compensation as provided by G. S. 1947 Supp. 44-520a.

(3) That there was collusion between claimant and his parent-employers, and the award and judgment are not supported by the evidence.

These contentions of appellant will be discussed in order.

Section 38-602, G. S. 1947 Supp., provides:

"That no child under sixteen years of age shall be at any time employed, permitted, or suffered to work in or about any mine or quarry; or at any occupation at any place dangerous or injurious to life, limb, health or morals. . . ."

Is the work of delivering 25- and 50-pound cakes of ice on a city route and riding in an ice truck such as the one involved here an occupation that is dangerous or injurious to life, limb, health or morals? Ordinarily the question of whether a particular occupation is dangerous within the meaning of the statute is a question of fact to be determined in each case. (*Casteel v. Brick Co.*, 83 Kan. 533, 112 Pac. 145.) In the instant case the trial court found that claimant's occupation was not such as to anticipate injury to claimant, and that the inherent character of his work and the manner in which it was carried on created no particular risk. This determination by the trial court is conclusive on appeal. (*Neal v. Boeing*

*Airplane Co.*, 161 Kan. 322, 167 P. 2d 643; *Cooper v. Helmerick & Payne*, 162 Kan. 547, 178 P. 2d 242.) A situation might exist which is so patently dangerous that a court could hold it so as a matter of law—but the instant case does not present that situation. This court will not examine the evidence for the sole purpose of attempting to draw therefrom different inferences than those of the trial court. The evidence sustains the trial court's finding that claimant's occupation was not dangerous within the meaning of the statute.

Section 38-603, G. S. 1935, provides:

"That no child under sixteen years of age, who is employed in the several vocations mentioned in this act, or in the transmission of merchandise or messages, or any hotel, restaurant or mercantile establishment, shall be employed before 7 a. m., or after 6 p. m., nor more than eight hours in any one calendar day, nor more than forty-eight hours in any one week."

The trial court found from the evidence that this section was not violated. Respondent insurance company produced a signed statement to the effect that claimant started to work at about 6:30 a. m. However, both claimant and his father testified that claimant's starting hour was 8 or 9 a. m., and this supports the finding made by both the compensation commissioner and the trial court. This finding by the trier of the facts that section 38-603 was not violated is also conclusive on appeal.

Section 38-604, G. S. 1935, provides:

"That all persons, firms, or corporations employing children under sixteen years of age in any of the vocations mentioned in this act, shall be required to first obtain and keep on file and accessible to any inspector or officer charged with the enforcement of this act, the work permit as hereinafter provided for."

It is admitted that the respondent employers did not obtain a work permit as provided for by this section of the statutes. Section 38-605 requires posting of a notice stating the maximum hours of work required of such child upon a form provided by the commissioner of labor and industry. Section 38-606 indicates that one of the purposes of this act, at least, is to prevent children under sixteen years of age from working when they should be in the elementary schools. In this respect we make merely a passing note of the fact that claimant in the instant case was engaged in summer work; that he had finished the elementary school, and in three days more, had this accident not occurred, would have begun his sophomore year of high school. Nevertheless, respondent employers

should have complied with the child labor law, by obtaining such a permit and posting the required notice. A failure to do so makes any employer liable to the penalties provided in Section 38-612, G. S. 1935. But these are duties, obligations and penalties imposed upon the employer—not the employee. Appellant urges this court to say that a fifteen-year-old employee, engaged in otherwise lawful employment, should be deprived of the benefits of the workmen's compensation act merely because the employer failed to do some act which the statute required of the employer. We cannot do that. The employer's failure to comply with G. S. 1935, 38-604, cannot be used as a shield to protect the employer or his insurance carrier.

For the reasons stated, there is no merit to appellants' contention that claimant was precluded from an award under the workmen's compensation act because of any violation of or failure to comply with the child labor law. The briefs of the parties discuss the effect that a violation of sections 38-602 and 38-603 by claimant might have upon his claim. But since there was no violation of those provisions of the child labor law as a matter of fact, it would be unavailing to labor the question further.

Next, appellants contend there was no compliance with G. S. 1947 Supp. 44-520a, requiring notice of claim for compensation to be filed within 120 days. It is conceded that such notice was not filed until March 25, 1948, *i.e.*, six months and twenty days after claimant's injury. The first subsection of section 44-520a provides:

"No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or to his duly authorized agent, or by delivering such written claim to him by registered mail within one hundred twenty days after the accident, or in cases where compensation payments have been suspended *within one hundred twenty days after the date of the last payment of compensation.*" (Emphasis supplied.)

It is not disputed here that the respondent employers furnished medical aid and hospitalization to claimant until as late as March 5, 1948—and the furnishing of such services by an employer to an employee *is the payment of compensation (Larrick v. Hercules Powder Co.*, 164 Kan. 328, 188 P. 2d 639). But appellants also contend in this connection that since the respondent employers are the parents of claimant, they must have furnished such medical and hospital services by reason of parental love and affection and not because of any employer-employee relationship. True, the father

and coemployer of claimant testified that payment of the doctor and hospital bills was prompted partly by his parental obligation to care for his son. The mother and other coemployer of claimant testified that she paid the doctor and hospital bills both as a mother and as an employer; that she paid these bills with a "Joe Dressler Transfer Co." check. She also said, however, that the household bills were paid in the same manner. There was testimony that Robert was treated as any other employee. There was no testimony or inference that the same care would not have been given another employee. This testimony certainly is not sufficient as a matter of law to establish that respondent employers did not furnish these services as employers. The evidence supported the finding of the trial court (and the previous finding by the commissioner) that the written claim for compensation was made as required by law.

Finally, appellants contend that all of the facts show conclusively there was collusion between claimant and respondent-employers which amounts to fraud against the insurance carrier. It is urged also that the findings generally, and the judgment based thereon, are not supported by the evidence. There is no evidence of fraud or collusion and the trial court so found. The findings, award and judgment are supported by substantial, competent evidence.

The judgment of the court below is affirmed.